UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PRIYA JOHN,<br>    *Plaintiff*,<br><br>    v.<br><br>ARIANS CO., *et al.*,<br>    *Defendants*. | No. 3:19-cv-01378 (VAB) |

**RULING AND ORDER ON MOTION TO AMEND**

On July 31, 2019, Priya John ("Plaintiff") filed a civil complaint in Connecticut Superior Court against Ariens Company ("Ariens"), Husqvarna Consumer Outdoor Products N.A., Incorporated ("Husqvarna," and together with Ariens, "Defendants"), Husqvarna Professional Products, Incorporated, and Kohler Company, setting forth various claims sounding in products liability and negligence relating to injuries allegedly incurred by Plaintiff. Compl., ECF No. 1-1 (July 31, 2019).

On January 27, 2021, Ms. John moved to amend the Complaint to add an additional party defendant, Mark Thomas. Mot. to Amend Compl. to Add Add'l Party Def., ECF No. 40 (Jan. 27, 2021) ("Mot. to Amend").

On February 17, 2021, Defendants opposed the motion to amend. Defs.' Opp'n to Pl.'s Mot. to Amend Compl. to Add Add'l Party Def., ECF No. 46 (Feb. 17, 2021) ("Defs.' Opp'n").

On February 18, 2021, Ms. John replied to Defendants' opposition. Reply to Defs.' Opp'n to Amend Compl., ECF No. 47 (Feb. 18, 2021) ("Pl.'s Reply").

For the following reasons, the Court **GRANTS** Plaintiff's motion to amend. Ms. John must file the Amended Complaint by **March 5, 2021**. If this Amended Complaint is timely filed,

consistent with this opinion, the Court *sua sponte* will remand this case back to the Connecticut Superior Court, Judicial District of Hartford, and close this case here.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[1]

Ariens allegedly "designed, manufactured, assembled, distributed, and/or sold a lawnmower called the Kohler Courage XT-7," a model which was "allegedly used by Priya John on June 17, 2018, at her home in West Hartford, Connecticut." Compl. at 1 ¶ 3.[2]

Husqvarna also allegedly "designed, manufactured, assembled, distributed, and/or sold" the Kohler Courage XT-7 model used by Ms. John on June 17, 2018. *Id.* at 11 ¶ 3.

On June 17, 2018, while Ms. John was allegedly "using the Kohler Courage XT-7 for its intended purpose[,] . . . the lawnmower blade [allegedly] suffered a catastrophic failure, was ejected out of the rear door of the lawnmower, deeply lacerated her leg and nearly severed an artery." *Id.* at 2 ¶ 7.

Allegedly "as a result of the Kohler Courage XT-7's malfunction," Ms. John allegedly "suffered . . . painful, disabling, and permanent injuries," including lacerations, losses of sensation, permanent scarring, and pain and suffering, as well as other injuries. *Id.* at 5 ¶ 9. "As a further result of the injuries caused by the Kohler Courage XT-7, [Ms.] John [allegedly] has incurred and will continue to incur costs and expenses for hospitalization, surgery, medical care," and other treatment, *id.* at 5 ¶ 10, and allegedly "has suffered a permanent reduction in her capacity to carry on and enjoy all of life's activities," *id.* at 5 ¶ 11.

---

[1] The Court sets forth only those facts deemed necessary to an understanding of the issues raised in and decided in this motion.

[2] Unless stated otherwise, references to the Complaint, as well as to other documents in which ECF pagination and internal pagination do not align, refer to the document's internal pagination.

Ms. John sets forth two counts against Ariens, alleging that Ariens was negligent in one or more of the following ways, including "failing to properly design," "recall," "modify," "warn consumers and users . . . of the dangers of," "provide adequate instructions for the use of," and "adequately test" the Kohler Courage XT-7, *see id.* at 2-3 ¶ 8(a), that Ariens breached both implied and expressed warranties relating to the Kohler Courage XT-7, *id.* at 3 ¶ 8(b), that the Kohler Courage XT-7 was "defectively designed, manufactured, distributed, or sold" in improper condition and absent proper modification or warnings, which was a "substantial factor" in Ms. John's alleged injuries, *id.* at 4, in violation of Connecticut General Statutes § 52-572m; and that the alleged incident "was of a kind that ordinarily does not occur in the absence of a product defect" such that "[a]ny defect most likely existed at the time the product left the manufacturer's or seller's control," under a "malfunction theory," *id.* at 6 ¶¶ 13-14.

Ms. John sets forth two substantively similar counts against Husqvarna. *See id.* at 11 ¶ 1-16 ¶ 14.

B. **Procedural Posture**

On July 31, 2019, Plaintiff filed the Complaint. Compl.

On September 5, 2019, Defendants removed the case to this Court. Notice of Removal, ECF No. 1 (Sept. 5, 2019).

On September 26, 2019, Defendants each filed an Answer to the Complaint. Def. Ariens Co.'s Answer, Special Defenses, and Jury Demand, ECF No. 15 (Sept. 26, 2019); Def. Husqvarna Consumer Outdoor Prods. N.A., Inc.'s Answer, Special Defenses, and Jury Demand, ECF No. 16 (Sept. 26, 2019).

On October 28, 2019, the Court issued an initial scheduling order, setting the date for the close of fact discovery to April 3, 2020, with expert witness designations due by June 5, 2020

(Plaintiff) and September 11, 2020 (Defendants), and expert witness depositions due by August 7, 2020 (Plaintiff) and November 13, 2020 (Defendants). Initial Scheduling Order, ECF No. 24 (Oct. 28, 2019).

On October 30, 2019, Ms. John filed a stipulation of dismissal, dismissing Kohler Co. and Husqvarna Professional Products, Inc. from the case. Stipulation of Dismissal, ECF No. 25 (Oct. 30, 2019).

On April 1, 2020, following a joint motion to amend the scheduling order, *see* Joint Mot. to Amend/Correct Scheduling Order, ECF No. 28 (Mar. 31, 2020), the Court extended various deadlines in its initial scheduling order, moving the close of fact discovery to July 3, 2020, the deadline for expert witness designations to August 7, 2020 (Plaintiff) and September 11, 2020 (Defendants), and the deadlines for expert witness depositions to October 9, 2020, for both Plaintiff and Defendants. Order, ECF No. 29 (Apr. 1, 2020).

On June 30, 2020, following another joint motion to amend the scheduling order, *see* Joint Mot. to Amend/Correct Scheduling Order, ECF No. 30 (June 29, 2020), the Court further extended various deadlines, moving the close of fact discovery to October 2, 2020, the deadlines for expert witness designations to November 6, 2020 (Plaintiff) and December 11, 2020 (Defendants), and the deadlines for expert witness depositions to January 8, 2021, for both Plaintiff and Defendants. Order, ECF No. 31 (June 30, 2020).

On November 13, 2020, following another joint motion to amend the scheduling order, *see* Joint Mot. to Amend/Correct Scheduling Order, ECF No. 37 (Nov. 12, 2020), the Court again further extended various deadlines, allowing Plaintiff until December 8, 2020 to supplement expert witness designations, Defendants until January 8, 2021 to supplement expert

4

witness designations, and extended the deadline for expert witness depositions to March 5, 2021. Order, ECF No. 38 (Nov. 13, 2020).

On January 27, 2021, Ms. John moved to amend the Complaint to add Mr. Thomas, who allegedly serviced the lawnmower Ms. John used on June 17, 2018, as a party defendant. Mot to Amend.

On January 29, 2021, Ms. John requested a telephonic status conference with the Court. Request for Telephonic Status Conf., ECF No. 41 (Jan. 29, 2021). Ms. John stated that there were "potential statute of limitations considerations regarding the Motion to Amend" she wished to discuss with the Court. *Id.* On January 30, 2021, the Court granted the motion and scheduled a February 4, 2021 status conference with the parties. Order, ECF No. 42 (Jan. 30, 2021).

Following the February 4, 2021 status conference, *see* Min. Entry, ECF No. 44 (Feb. 4, 2021), the Court issued an Order explaining that despite any statute of limitations issues arising from Ms. John's attempt to add Mr. Thomas as a party nearly three years from the filing of the Complaint, the Court would decline to order expedited briefing, but would address the issue "expeditiously." Order, ECF No. 45 (Feb. 4, 2021). The Court further advised Plaintiff that the Court took "no position on and certainly this order should not be construed as precluding [her] from taking whatever appropriate procedural steps are necessary to preserve any potential claims against Mr. Thomas until this Court resolves the pending motion to amend." *Id.*

On February 17, 2021, Defendants opposed the motion to amend. Defs.' Opp'n.

On February 18, 2021, Ms. John replied to Defendants' opposition. Pl.'s Reply.

**II.    STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a

5

responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). If a court chooses to deny leave to amend, however, it must give some "justifying reason" for doing so. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)).

But where a party seeks leave to amend after the deadline to amend pleadings as passed, the court has greater discretion to deny leave to amend. *See Lyddy v. Bridgeport Bd. of Educ.*, No. 3:06-cv-1420 (AHN), 2008 WL 5117679, at *1 (D. Conn. Dec. 4, 2008) ("In other words, when the court issues a pretrial scheduling order [under] Fed R. Civ. P. 16 that establishes a time

table for amending pleadings, a plaintiff's ability to amend the complaint is governed by Rule 16, not Rule 15(a)." (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Carnrite v. Granada Hosp. Grp., Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997)). In these cases, a moving party may be required to demonstrate that there is "good cause" both to amend the scheduling order and to amend their pleading. *See Parker*, 204 F.3d at 340 ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."). "[A] finding of 'good cause' depends on the diligence of the moving party." *Id.*

In exercising their discretion under Rule 16(b), courts "also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 243; *see also Lacher v. C.I.R.*, 32 F. App'x 600, 603 (2d Cir. 2002) (noting that undue prejudice to the opposing party is "typically the most important consideration in evaluating a motion to amend a pleading").

### III. DISCUSSION

#### A. Motion to Amend

Ms. John seeks to amend her Complaint to add Mark Thomas as a defendant in this case. Mot. to Amend at 2.

Ms. John alleges that "[b]efore [she] used the lawnmower and was injured, she had it serviced by" Mr. Thomas. *Id.* at 1-2. Mr. Thomas, who was allegedly "deposed on August 10, 2020," allegedly described at his deposition "how prior to the incident he inspected the lawnmower, including the blade, and saw nothing wrong with it." *Id.* at 2. Ms. John also

allegedly "retained and disclosed two experts who examined the lawnmower, and neither of them determined that Mr. Thomas'[s] inspection of the lawnmower was negligent or contributed to th[e] incident." *Id.* Ms. John therefore argues that "[u]ntil recently, . . . [she] had no good faith basis to believe that Mr. Thomas bore any responsibility for [her] injury." *Id.*

Ms. John argues, however, that "on January 8, 2021, [] Husqvarna disclosed their liability experts' reports to [her] counsel," with one expert, Mr. Howerton, allegedly concluding that

> The crack in the subject blade had been present for a significant period of time. It is unlikely that it developed during the limited time that it was used after [Mr.] Thomas serviced it. Had [Mr.] Thomas, or anyone for that matter, really looked at the blade, they would have realized that it should have been replaced. This accident occurred because no one made the effort to inspect the blade properly.

*Id.* (citing Letter to Holly Polglase, dated Jan. 8, 2021, ECF No. 40-1 (Jan. 27, 2021)). As Ms. John argues, "[i]t now appears that Husqvarna's expert believes that Mr. Thomas was the primary cause of [her] injury, and [she] now has a good faith basis to assert a negligence claim against him." *Id.*

Ms. John acknowledges that she is required to show good cause exists to amend the scheduling order to permit her to add Mr. Thomas as a defendant, but argues that good cause exists because Mr. Thomas stated in his deposition that he did not see anything that looked suspicious during the inspection, and that "[p]rior to Mr. Howerton's report, [she] had no basis to believe that Mr. Thomas should have seen anything wrong with the lawnmower blade during his inspection." *Id.* at 4 (emphasis omitted).

Ms. John argues further that allowing the amendment will "conserve judicial resources and avoid the possibility of inconsistent verdicts," because if the amendment is not permitted, she will have to separately sue Mr. Thomas. *Id.* at 5. In her view, the amendment also is not prejudicial to Defendants because the trial-ready date of the case is not until July 5, 2021. *Id.* She

8

further argues that she has acted "with all due diligence with respect to her claim."[3] *Id.* She proposes to amend the Complaint to add one count of negligence against Mr. Thomas, but the proposed amended Complaint does not drop any of the counts against Husqvarna or Ariens. Proposed Am. Compl., ECF No. 40-3 (Jan. 27, 2021).

Defendants object to the motion to amend, arguing that Ms. John "has not demonstrated good cause to deviate from the scheduling order under [Federal] Rule [of Civil Procedure] 16(b) and the motion will unduly delay the litigation and result in undue prejudice and cost to the Defendants under [Federal] Rule [of Civil Procedure] 15(a)." Defs.' Opp'n at 6.

With respect to good cause, Defendants argue that Ms. John "had all the information necessary" to amend the Complaint well before the scheduling order deadline, because Ms. John was aware of Mr. Thomas's identity, and the scope of the work he had performed on the lawnmower, all of which was discussed during fact witness depositions. *Id.* at 6-7. In Defendants' view, Ms. John "knew . . . that there were maintenance issues with the lawnmower that allegedly caused the lawnmower blade to fail from the very start of th[e] case," based on an expert report produced by Plaintiff to Defendants in April 2019 by Dr. Andy Foley, which concluded that the lawnmower blade was installed upside down and the central bolt on the blade was insufficiently torqued. *Id.* at 8. As Defendants note, because "Mr. Thomas was questioned extensively during his deposition regarding his inspection of the blade and lawnmower and testified that he did not notice the lawnmower blade had been installed upside down," and Plaintiff "knew from Dr. Foley's report that the bolt was not torqued properly at the time of the

---

[3] Ms. John also notes that "under normal circumstances, the statute of limitations would have [expired] for claims against Mr. Thomas on June 17, 2020," but observes that Governor Ned Lamont's suspension of the running of statutes of limitations until February 9, 2021 means that the claims against Mr. Thomas are "not time barred." *Id.* at 5 n.1.

accident and based on that report, Mr. Thomas was an obvious potential defendant." *Id.* Similarly, Defendants argue that because Dr. Foley's report "describe[d] several areas of the blade that showed evidence of 'fretting,'" or "gradual wear" to the blade, and Plaintiff "was aware of [these] conclusions," she had "more than a good faith basis to add a negligence count against Mr. Thomas asserting that he should have noticed the damaged blade during his inspection," even without Mr. Howerton's opinion as to any visible cracks. *Id.* at 9.

With respect to prejudice and delay, Defendants argue that granting amendment will cause "significant delays," as, in their view, they will likely "have to expend [additional resources] to conduct more discovery and redo expert reports," and will need to allow "[a]dditional time . . . for Mr. Thomas to serve and respond to written discovery requests." *Id.* at 10. They argue further that reopening discovery will push back expert depositions scheduled in February, which will push back other remaining deadlines, meaning the trial date will also likely need to move. *Id.*

Finally, Defendants note that because Mr. Thomas lives in Connecticut, adding him as a defendant will defeat diversity jurisdiction "and likely result in the matter being remanded to state court," which "deprives Defendants of their choice of venue after the case has been litigated in this [C]ourt for over a year." *Id.* at 10-11.

Ms. John argues in reply that though she was aware of Mr. Thomas's identity and the fact that he inspected the lawnmower, she "did not know" before Mr. Howerton's report "that Mr. Thomas could have done anything to change the circumstances that caused [her] injury," Pl.'s Reply at 1, and notes further that she "had two experts conduct metallurgic and structural examinations of the blade," neither of whom believed that, "prior to the incident, the blade was in a condition that was visibly unsafe for use," *id.* at 2. She argues further that while Plaintiff's

experts, such as Dr. Foley, noted the blade was on upside down, "all experts in th[e] case concede that the orientation of the blade played no role in its failure." *Id.* at 2. She argues that Mr. Thomas "does not have a metallurgic background or engineering degree," and that "[p]rior to Defendants' experts opining that there was a large visible crack in the blade, there was nothing to suggest that someone with [his] training . . . could have foreseen that the blade would break." *Id.* at 2-3. She argues further that Defendants' expert report also "changes the picture of Mr. Thomas'[s] culpability" because it shows that "Mr. Thomas could have done something to avoid Ms. John's injury," a theory that, in Ms. John's view, was never contemplated before Mr. Howerton's report. *Id.* at 3.

With respect to prejudice, she argues that it is unlikely that jury trials will proceed in the near future in any event due to COVID-19, and that, even if the case were to proceed to trial in six months, "there is sufficient time for the Defendants to complete any modest, additional discovery that might be needed due [to] the addition of Mr. Thomas as a party." *Id.* at 4.

On balance, the Court agrees with Ms. John.

To satisfy the good cause standard, the moving party "must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05-CV-3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009). And the good cause standard is not satisfied when the proposed amendment rests on information "that the party knew, or should have known, in advance of the deadline." *Id.* at *8; *see also Parker*, 204 F.3d at 340-41 (a party cannot establish diligence when it "had all the information necessary" prior to the expiration of the amendment deadline).

Though it is clear from the record – and indeed, Plaintiff concedes – that she knew of Mr. Thomas's identity and his role in the inspection of the lawnmower significantly earlier in the

11

litigation, *see* Pl.'s Reply at 1-2, she did not believe that the record established a good faith basis to join Mr. Thomas as a party defendant before Mr. Howerton's report was filed, or that she otherwise failed to previously add Mr. Thomas as a defendant due to a "fail[ure] . . . to investigate [her] client's claims diligently." *In re Fosamax Prods. Liab. Litig.*, Nos. 1:06-MD-1789-JFK, 1:06-cv-9449-JFK, 2009 WL 137087, at *5 (S.D.N.Y. Jan. 21, 2009). Moreover, given that previous expert testimony had failed to mention the cracks in the blade discussed by Dr. Foley, her failure to previously add Mr. Thomas for allegedly missing a visible error was not due to "lack of diligence," but rather as a response to newly-available information. *See, e.g.*, *Stein v. Needle*, No. 3:19-CV-01634-VLB, 2020 WL 4043047, at *2 (D. Conn. July 17, 2020) (slip op.) (finding that Plaintiffs had "demonstrated diligence sufficient to establish good cause" in part where "Plaintiffs could not have anticipated the specific objections Defendants intended to raise in their motions to dismiss").

As to whether Defendants will suffer undue prejudice if leave to amend is granted, the Court must consider whether the non-moving party "would be required to expend significant additional resources to conduct discovery and prepare for trial, whether the amendment will significantly delay resolution of the dispute, whether the opposing party was on notice of the new claim, and whether the new claim derives from the same facts set forth" in the original complaint. *Censor v. ASC Techs. of Conn., LLC*, 900 F. Supp. 2d 181, 208 (D. Conn. 2012). Under these circumstances, Defendants' claims of undue prejudice are overstated.

As Plaintiff notes, courts in this District have suspended jury trials until at least May 3, 2021 given the COVID-19 pandemic, which has caused civil and criminal trials alike to be operating on a significant delay. *See* Gen. Order Regarding Ct. Operations Under the Exigent Circumstances Created by COVID-19, U.S. Dist. Ct. for the Dist. of Conn. (Dec. 3, 2020).

Moreover, though the addition of Mr. Thomas as a defendant may require additional discovery and/or further push back trial and other deadlines, the scheduling order in this case has already been extended three previous times on joint motion by the parties, including as recently as November 2020. *See* Orders, ECF Nos. 29, 31, 38. Because of the delays related to COVID-19 and the repeated amendments of the scheduling order already, the discovery resulting from granting leave to amend is not "significant" enough to warrant this motion's denial. *See Censor*, 900 F. Supp. 2d at 208. As to the final two factors – whether Defendants were "on notice of the new claim," and "whether the new claim derives from the same facts set forth" in Ms. John's original pleading, *id.*, Defendants' briefing on this motion makes clear that they were aware of Mr. Thomas's potential involvement at least as early as the preparation of expert reports, and perhaps even earlier, and Mr. Thomas's actions plainly arise from the same set of facts underlying Ms. John's original Complaint. *See* Defs.' Opp'n.

Defendants similarly do not offer caselaw for the proposition that this motion should be denied because adding Mr. Thomas as a defendant would defeat diversity jurisdiction, thus causing this Court to remand the action to state court, and depriving Defendants of their choice of forum.

In any event, if leave to amend were denied, Ms. John would "have to bring a separate lawsuit against Mr. Thomas," which would "require litigation of the same facts and circumstances at issue in this case in a separate proceeding," and "raises the possibility of inconsistent verdicts that could prejudice either of the parties." Mot. to Amend at 5. As one court in this District previously recognized in a similar circumstance, "there is little to be gained from encouraging the piecemeal litigation that might result if [the New Haven Parking Authority] were forced to raise its counterclaim in Connecticut Superior Court." *Coale v. Metro-North*

13

*Railroad Co.*, No. 3:08-cv-01307 (CSH), 2009 WL 4881077, at *3 (D. Conn. Dec. 11, 2009). "Scheduling orders are not the Code of Hammurabi." *Id.* As a result, even though this Court "would not abuse [its] discretion in denying leave to amend," *id.* (relying on the Second Circuit's standard in *Parker*, 200 F.3d at 340), given the emerging significance of Mr. Thomas in resolving the issue of liability at the heart of this case, the Court will allow him to be brought into this case more formally.

Accordingly, the Court will grant Ms. John's motion for leave to amend the Complaint to add Mr. Thomas as a party defendant.

### B. Remand

Federal subject-matter jurisdiction in this case is premised solely on diversity of citizenship. *See* 28 U.S.C. § 1331(a)(1). "The citizenship requirement for diversity jurisdiction has been interpreted to mean complete diversity so that each plaintiff's citizenship must be different from the citizenship of each defendant." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) ("[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action.").

Defendants argue, and Ms. John does not appear to dispute, that if Mr. Thomas is properly joined, his Connecticut citizenship would bar diversity jurisdiction and mandate a remand of this action to state court. Defs.' Opp'n at 10 ("Finally, Mr. Thomas lives in Connecticut, and adding him as a defendant will defeat diversity and likely result in the matter being remanded to state court."); Pl.'s Reply at 5 ("To the extent that the Defendants rely on the loss of diversity jurisdiction in support of their claims of prejudice, any impact on subject matter

14

jurisdiction in support of their claims of prejudice is due to the Defendants' own allegations leveled at a Connecticut resident, rather than any choice made by the Plaintiff.").

Therefore, given the Court's grant of the motion for leave to amend to add Mr. Thomas as a party defendant, "[b]ecause the parties agree that one of the named defendants . . . is from the same state as the plaintiff, complete diversity appears to be missing." *Shannon v. Target Stores, Inc.*, No. 3:13-cv-612 (SRU), 2013 WL 3155378, at *1 (D. Conn. June 20, 2013). Though "[i]n limited circumstances, . . . a named defendant may be disregarded in determining diversity under the doctrine of fraudulent joinder," *id.* (citing *Briarpatch Ltd., L.P.*, 373 F.3d at 302), Defendants have raised no such argument here.

As a result, given the parties' agreement that adding Mr. Thomas as a defendant would defeat diversity jurisdiction and both Mr. John's and Mr. Thomas's residence in Connecticut, *see* Proposed Am. Compl. at 11 ¶ 2 ("At all times relevant herein, the plaintiff, Priya John, was and is a resident and citizen of the State of Connecticut."); *id.* at 11 ¶ 1 ("At all relevant times herein, the defendant, Mark Thomas, was and is a resident and citizen of the State of Connecticut."), "the Court [is] unconvinced that it has subject matter jurisdiction" and will remand this matter back to the Connecticut Superior Court. *Zhaoyin Wang v. Beta Pharma, Inc.*, No. 3:14-cv-01790 (VLB), 2015 WL 5010713, at *3 (D. Conn. Aug. 24, 2015); *see also* 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."); *Battaglia v. Shore Parkway Owner LLC*, 249 F. Supp. 3d 668, 670 ("A court may remand a removed case to state court *sua sponte* and absent a motion from the plaintiff if it finds its subject matter jurisdiction lacking."); *Royal Ins. Co. v. Jones*, 76 F. Supp. 2d 202, 204 (D. Conn. 1999) (a "court lacking subject matter jurisdiction over a removed action

15

must remand that action to state court *sua sponte* or on motion"); *Wise v. Lincoln Logs, Ltd.*, 889 F. Supp. 549, 554 (D. Conn. 1995) (remanding case with non-diverse defendant to state court for lack of subject matter jurisdiction).

## IV.     CONCLUSION

For the reasons above, the Court **GRANTS** Plaintiff's motion to amend. Ms. John must file the Amended Complaint by **March 5, 2021**. If this Amended Complaint is timely filed, consistent with this opinion, this Court *sua sponte* will remand the case back to the Connecticut Superior Court, Judicial District of Hartford, and close this case here.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of February, 2021.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE